UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WAYNE HOWARD                                                    CIVIL ACTION

VERSUS                                                          NO. 10-1814

WENDY LEMMIER, KATHERINE M.                                     SECTION "I"(4)
DOWLING, ALBERT F. WIDNER, JR.,
ELIZABETH TOCA, JUDGE ANN KELLER,
JUDGE C.B. EDWARD, INFANT TEAM OF
JEFFERSON PARISH, JEFFERSON
PARISH JUVENILE COURT, HARVEY, LA.

## REPORT AND RECOMMENDATION

On January 18, 2011, the undersigned Magistrate Judge issued a Report and Recommendation recommending dismissal as frivolous of the plaintiff Wayne Howard's claims against each of the named defendants.[1] After considering the plaintiff's objections, the District Judge adopted part of the Report and Recommendation dismissing all but the claims urged against the defendant Wendy Lemmier.[2] The District Judge also remanded the matter to the undersigned for further development of the plaintiff's claims against Wendy Lemmier as a social worker and for clarification of his allegations of conspiracy. To accomplish this, on April 18, 2011, the Court

---

[1] Rec. Doc. No. 4.

[2] Rec. Doc. No. 7, 8.

conducted a hearing pursuant to *Spears v. McCotter*,³ and its progeny, with the plaintiff participating by conference telephone call.⁴

## I.     Factual Background

### A.     The Complaint

In his original complaint, the plaintiff, Wayne Howard ("Howard"), filed this *pro se* and *in forma pauperis* complaint brought pursuant to 42 U.S.C. § 1983 against Wendy Lemmier identified as a Social Worker with the Office of Community Services in Jefferson Parish, Katherine M. Dowling, Albert F. Widmer Jr., Elizabeth Toca, Juvenile Court Judges Ann Keller and C.B. Edward, the "Infant Team of Jefferson Parish," and the Jefferson Parish Juvenile Court in Harvey, Louisiana. Howard is incarcerated in the Templeman Jail within the Orleans Parish prison system.

Howard alleged that each of the defendants dishonestly and secretly kept his son away from him and his family. He further alleged that the parish officials knew that he was trying to gain custody of his son on numerous occasions. He sought a determination by this Court that the parish officials violated his civil rights and further sought an order requiring them to return his son to him or to someone in his family. He further sought monetary damages in the amount of $3 million.

### B.     The *Spears* Hearing

Howard testified that the defendant, Wendy Lemmier, works for the Jefferson Parish "OCS."⁵ She was the case worker assigned to his son W.T.'s case. He explained that he was

---

³766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

⁴Rec. Doc. No. 11. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

⁵He indicated this to be the Office of Child Services.

arrested in Assumption Parish for possession of cocaine in 2005. He was convicted on the charges in 2007 and received a two-year sentence. While he was in prison, people from Jefferson Parish did a paternity test on him and determined he was W.T.'s father. W.T. was born in 2007 and was almost three years old at the time of the *Spears* Hearing. He met Lemmier in October or November of 2007, when he was taken to a courthouse in Harvey, Louisiana to discuss his paternity. They told him that W.T.'s mother, Adelle Thomas, got into trouble with the law. They brought him to the OCS office to sign papers regarding W.T.'s custody. He said Lemmier and a court-appointed lawyer told him that the papers would help him get W.T. back after he got out of jail. He admitted that he never read the papers he signed, which apparently relinquished his parental rights to W.T. He also stated that the OCS lawyer assigned to him told him that signing the papers would help him. She otherwise gave him no assistance, even after his rights were later taken away.

Howard stated that, when he got out of jail in April of 2008 on the Assumption Parish charges, the Jefferson Parish OCS people would never release W.T. to him. He went to see Lemmier and she told him that they would put a case plan together to help him get his son. He stated that he went to other hearings over time, and the Jefferson Parish people just wanted to put W.T. up for adoption. He claimed that they repeatedly asked him to take drug tests, even though he told them he did not use drugs. He also complained that Lemmier even went to check on the suitability of his home, and still did not help him get custody of W.T.

At the time, however, he still had outstanding cocaine distribution charges pending in Orleans Parish. This became a problem when he met with the Jefferson Parish Infant Team. He did not answer the questions they asked, because the criminal case was opened. He asked the OCS

lawyer to assist him, but she could not represent him in those meetings.  He did not return for the follow-up meetings with the Infant Team.

Howard stated that he went to the scheduled visitations through Lemmier, but when he would arrive, W.T. was not there.  They told him that W.T. was sent to a foster family out of town.  He also stated that he tried to pay money for W.T. to Lemmier, and she sent his checks back.  In spite of his efforts, he claimed that Lemmier told the judge at hearings in 2008 that he did not go to visitation and did not pay support money.

He went back to an OCS hearing in September 2008, and the OCS people made him take another drug test, which he passed.  In October of 2008, his criminal proceedings in Orleans Parish took precedent.  He was actually arrested by his parole officer after she mistook his reinstated distribution of cocaine charge for a new charge.  After he was released, he was arrested again anyway because he was living in his girlfriend's home and she had a weapon.  Howard indicated that he eventually entered a plea of guilty to the Orleans Parish distribution charge, and the attempted felon in possession charge.  He was sentenced to five years, of which he expected to only serve 27 months.  At the time of the *Spears* Hearing, he believed he would be released in less than 70 days.

He told the Court that he sued Lemmier because she lied to the Court about his efforts to get custody of W.T.  He claims that she also lied to his daughter, who was attempting to set up W.T.'s adoption for him in 2008 and 2009.  His daughter set up appointments with OCS for the adoption, and later found out that OCS had already begun adoption proceedings to another family.  He stated that they never told her or him about the other adoption proceeding.  He indicated that W.T.'s mother was still in jail and must have lost her parental rights.

He also sued Lemmier, because they did not help him get custody of W.T. He complained that nothing he did was sufficient for them to find him suitable to have custody of W.T., especially when she led the Court to believe that he did not really want W.T. After a custody hearing before a judge, his parental rights were terminated. He claims that the judge did not ask him any questions and instead heard only from Lemmier and the OCS people. W.T. was adopted by another family in October or December of 2009. He contacted the OCS lawyer he had seen, but she told him that an appeal would be frivolous.

As further relief, he asks to be sent back to court so that he can present witnesses to help get custody of W.T.

## II. Standards of Review

Title 28 U.S.C. §§ 1915A and Title 42 U.S.C. §§ 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional

allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

### III.   Analysis

#### A.   Claims against Wendy Lemmier

Howard alleges that Lemmier was a social worker for Jefferson Parish assigned as the case worker on his son W.T.'s custody proceedings. He alleges that Lemmier misled the court with information that he did not want to take custody of his son, born while he was incarcerated in Assumption Parish. He claims that this information, along with the representation that he continued to engage in criminal activities, contributed to the judge's decision to terminate his rights. He further alleges that Lemmier did not tell him or his daughter that adoption proceedings were underway to have W.T. adopted by another family.

As noted in the Court's prior Report and Recommendation, § 1983 provides a federal cause of action against any person, who, acting under color of state law, deprives another of his constitutional rights. 42 U.S.C. § 1983 (2006). A plaintiff must prove both the constitutional violation and that the action was taken under color of state law. *Flagg Bros.*, *Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk Country v. Dodson*, 454 U.S. 312 (1981). The Court will address each factor below.

### 1.     **<u>Lemmier is a State Actor</u>**

In order to prove the deprivation of a right protected by the Constitution, a plaintiff must prove state action. *Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995). Under the "color of law" requirement, a defendant in a § 1983 action must have committed the complained-of acts in the course of their performance of duties, and have misused power that they possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. *United States v. Classic*, 313 U.S. 299, 325 (1941); *Thibodeaux v. Bordelon*, 740 F.2d 329, 333 (5th Cir. 1984). The proper query then is "[w]hether the alleged infringement of federal rights stemmed from conduct fairly attributable to the state." *Yeager v. McGregor*, 980 F.2d 337, 339 (5th Cir. 1993) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 938 (1982)). Conduct which deprives a party of a federally protected right is "fairly attributable to the state" if it is shown: (1) that the deprivation is caused by the exercise of a state-created right or privilege, by a state-imposed rule of conduct, or by a person for whom the state is responsible; and (2) that the party charged with the deprivation may be fairly described as a state actor. *See Lugar*, 457 U.S. at 937.

Howard testified at the *Spears* Hearing that Lemmier was the case worker assigned by OCS in Jefferson Parish to handle and investigate the custody case over his son, W.T. He indicated that his complaints against her arose from her actions taken as the OCS case worker in investigating him as a parent and in presenting information to the judicial officer about the case. This is sufficient to identify Lemmier as a state actor.

### 2.     **<u>Lemmier in Her Official or Individual Capacity</u>**

A defendant can be sued under § 1983 in either her official or individual capacity. Official capacity suits "'generally represent only another way of pleading an action against an entity of

which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dept. of Soc. Serv's*, 436 U.S. 658, 690, n.55 (1978)). Individual, or personal capacity, suits seek to impose individual liability upon a government officer or employee for actions taken under color of state law. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Graham*, 473 U.S. at 166).

Howard alleges that Lemmier was an employee of the OCS in Jefferson Parish.[6] He did not indicate in the complaint or during the *Spears* Hearing in which capacity, official or personal, he sued Lemmier. In either capacity, he has failed to state a claim that would survive the Court's frivolousness review.

### a. Official Capacity

In her official capacity as an employee of Jefferson Parish, any liability would be upon the Parish. *See Graham*, 473 U.S. at 165 (quoting *Monell*, 436 U.S. at 690, n.55). For purposes of liability under § 1983 against the Parish, or the actor in her official capacity, the plaintiff must show the existence of an officially adopted policy or an established custom of the local governing body that caused injury and show a causal connection between that policy or custom and the deprivation of a constitutional right. *Collins v. Doyle*, 209 F.3d 719, 2000 WL 284021, at *3 (5th Cir. Feb. 9, 2000) (Table, Text in Westlaw) (citing *Monell*, 436 U.S. at 694).

In this case, Howard has made no indication of his intent to name Lemmier in her official capacity. If he so intended, he has not made the showing required to assert liability against Jefferson Parish. He has not identified any alleged Parish policy which deprived him of a constitutional right. Instead, his claims concern isolated actions by Lemmier in his son's case.

---

[6]In an official capacity, if she had been identified as an employee of the State of Louisiana, she would not be a person subject to suit under § 1983. *See Will v. Mich. Dep't of St. Pol.*, 491 U.S. 58 (1989).

Furthermore, Howard has not indicated that Lemmier, a case worker, was a final-policy maker for Jefferson Parish such to be held liable in an official capacity for any such violative policy, assuming one was identified. *Accord Causey v. Parish of Tangipahoa*, 167 F. Supp.2d 898, 909 (E.D. La. 2001) (only the final-policy maker can be sued in an official capacity). The complaint and the *Spears* testimony are not sufficient to state a claim against Lemmier in her official capacity.

### b.     Individual Capacity

In her individual capacity, Howard has not alleged that Lemmier acted in violation of a protected constitutional right. Individual liability under § 1983 requires a showing of: (1) abusive conduct committed by a person acting under color of state law; and (2) that such conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Abdeljalil v. City of Fort Worth*, 55 F. Supp.2d 614, 625 (N.D. Tex.1999) (citing *Daniels v. Williams*, 474 U.S. 327, 329-36 (1986)). For the second element to be established, the plaintiff must prove that the defendant knowingly acted to cause of the deprivation. *Id*.

As outlined above, Howard complains that Lemmier misled the state court with information that he did not want to take custody of his son and that this misinformation, along with the representation that he continued to engage in criminal activities, contributed to the judge's decision to terminate his parental rights. He also complained that Lemmier did not tell him or his daughter that adoption proceedings were underway to have W.T. adopted by another family. Under the broadest readings to be afforded Howard's claims, he appears to assert a claim for the denial of both substantive and procedural due process by Lemmier.

Although the right to family integrity has not been clearly defined, the Fifth Circuit has at least endorsed a "shocks the conscience" test for violation of any such right that may exist. *Doop*

*v. Chapman*, 211 Fed. Appx. 246, 248 (5th Cir. 2006) (citing *McLendon v. City of Columbia*, 305 F.3d 314, 325-26 (5th Cir. 2002)); *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). This would require a showing that "the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Morris v. Dearborne*, 181 F.3d 657, 668 (5th Cir. 1999) (quoting *Lewis*, 523 U.S. at 847 n.8). "If this standard is met, a court must next determine whether there exist historical examples of recognition of the claimed liberty protection at some appropriate level of specificity." *Id*.

Howard has not alleged any facts sufficient to present this type of claim. His only claims against Lemmier are that she allegedly misled the court about his willingness to take custody of W.T. and did not inform him or his daughter about the adoption proceedings. While Howard believes Lemmier lied to the court, he concedes that her statements to the court were based on truthful events. For example, Howard admits that he signed away his parental rights without reading the papers he signed or seeking legal advice before doing so. This would tend to show his willingness to separate himself from W.T. He also was in fact under criminal charges which led to his incarceration during much of the time he was pursuing custody of W.T., including the time during which he tried to get his daughter to pursue adoption of W.T. These criminal proceedings included ongoing criminal activity *vis a vis* the new charge of attempted felon in possession to which he entered a guilty plea.

Thus, nothing Howard points to was a lie to the state court. Howard has not presented any allegation to contradict or indicate falsehood in Lemmier's alleged testimony before the state court about his relinquishment of parental rights or about his criminal record and incarcerations. Nevertheless, standing alone, Lemmier would be entitled to absolute immunity as a witness for her

testimony before the state court. *Accord Metoyer v. Connick*, No. 99-3019, 2000 WL 863133, at *3-5 (E.D. La. Jun. 26, 2000).

Howard also has pointed to no provision of law which would entitle him to know that another adoption proceeding was underway for W.T. to be placed with another family. Furthermore, by that time, he had no parental rights to W.T., because those rights were taken from him by the state court. He acknowledges that OCS's function was to do what was best for W.T. *See* La. Child. Code Ann. art. 1001 ("The purpose of this Title is to protect children whose parents are unwilling or unable to provide safety and care adequate to meet their physical, emotional, and mental health needs, by providing a judicial process for the termination of all parental rights and responsibilities and for the certification of the child for adoption.")

Howard, nevertheless, believes that Lemmier should have saved him and his daughter the effort of pursuing an adoption. Although he "butted heads"[7] with Lemmier, neither her negligence nor her insensitivity is a sufficient basis for the substantive due-process claim of interference with family relations. *Martin v. Tex. Dep't of Protective and Regulatory Servs.*, 405 F. Supp.2d 775, 788 (S.D. Tex. 2005) (citing *Lewis*, 523 U.S. at 849) (other citations omitted).

To the extent Howard is attempting to raise a procedural due process argument, his claim is still frivolous. The Supreme Court has held that parental rights cannot be denied without an "opportunity for them to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

In this regard, a procedural due process claim requires a two-part analysis. First, the court must determine whether the defendant deprived the plaintiff of a protected liberty or property

---

[7]Howard used this term during the *Spears* Hearing and claimed that he reported his "butting heads" with Lemmier to her supervisor.

interest. If so, then the Court must assess what process was due to the plaintiff of which he was deprived. *Hamlin v. Vaudenberg*, 95 F.3d 580, 584 (7th Cir. 1996). As referenced above, the Supreme Court has recognized "'a fundamental liberty interest of natural parents in the care, custody, and management of their child.'" *Martin*, 405 F. Supp2d at 789 (quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)) (other citations omitted). The Court also found that a child has a fundamental right to be raised by his parents. *Id.*; *Wooley v. City of Baton Rouge*, 211 F.3d 913, 923 (5th Cir. 2000) ("[A] child's right to family integrity is concomitant to that of a parent.").

Under Louisiana law, these fundamental parental rights may be terminated when a child is in custody of the State and the parent, or parents in this case, are "convicted and sentenced to a period of incarceration of such duration that the parent will not be able to care for the child for an extended period of time, considering the child's age and his need for a safe, stable, and permanent home; and despite notice by the department, the parent has refused or failed to provide a reasonable plan for the appropriate care of the child other than foster care." La. Child. Code Ann. art. 1015(6). Louisiana law further provides for specific notice to incarcerated parents before parental rights are terminated and an opportunity to set forth a plan for the child's care. La. Child. Code Ann. art. 1036.2. After a hearing before the court, the final termination judgment is to be issued by the court setting forth the grounds for the termination. La. Child. Code Ann. arts. 1034, 1037.

Howard acknowledged at the *Spears* Hearing that he knew he was in a legal battle to obtain custody of W.T. after his paternity was established and after he was released from jail. He testified that Lemmier told him that he would have to prepare a child care plan to regain custody of W.T. He does not allege that Lemmier prevented him from receiving the proper notice or from attending hearings on his parental rights to which he was entitled. He in fact indicated that he appeared at

several hearings between 2008 and 2009 before judges in the court in Harvey, Louisiana. He also attended several meetings with OCS and at least one with the Jefferson Parish Infant Team, at which he refused to answer questions.

Although he is dissatisfied with the outcome, he concedes that the final decision to take away his parental rights to W.T. was that of a judicial officer after a full hearing and after he was again convicted and incarcerated. Although Howard claims that the last judge to preside over the case did not ask him questions and only heard the side of the OCS personnel, he does not challenge that the judge made the final decision, a decision he did not appeal from jail.

Based on the original complaint and the *Spears* Hearing testimony, Howard has not demonstrated that Lemmier acted in violation of his constitutional rights. The claims against Lemmier must be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to § 1915(e)(2) and § 1915A.

### B.     Conspiracy Claim

The Court's remand also inquired into Howard's claim of a conspiracy. Howard did not indicate in his complaint that Lemmier, or any of the already dismissed defendants, engaged in conspiratorial actions to prevent him from gaining custody of W.T. "Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987) (citations omitted). "'To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act.'" *Dayse v. Schuldt*, 894 F.2d 170, 173 (5th Cir.1990) (quoting *Arcenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982)). Howard has made no such claim here.

Howard's allegations are directed at specific actions or inactions by Lemmier in her investigation and presentation of W.T.'s case to the state court. He has made no statement which would indicate that she acted in a conspiracy with any of the other named defendants or any other person during the course of the custody/parental rights proceeding. To the extent he intended to raise such a claim, it is frivolous pursuant to § 1915(e)(2) and § 1915A.

### IV.   Recommendation

It is therefore **RECOMMENDED** that Howard's § 1983 claims against Wendy Lemmier, in her official and individual capacities, be **DISMISSED WITH PREJUDICE** as frivolous, and for failure to state a claim for which relief can be granted pursuant to § 1915(e) and § 1915A.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[8]

New Orleans, Louisiana, this 20th day of October, 2011.

                                      **KAREN WELLS ROBY**
                                  **UNITED STATES MAGISTRATE JUDGE**

---

[8]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.